UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AHMAD M. AJAJ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-cv-00244-JPH-MG |
| ) | |
| J. E. KRUGER, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART, DENYING IN PART
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Ahmad Ajaj filed this civil rights complaint against 16 defendants.[1] Mr. Ajaj alleges religious discrimination, deliberate indifference to serious medical needs, and retaliation during his incarceration at USP-Terre Haute from January 2018 to February 2019. He also alleges a handful of ongoing violations. Mr. Ajaj remains in federal custody, but he is now—and was when he filed his complaint in this action—housed at USP-Allenwood in Pennsylvania.

The Court previously screened the complaint and permitted the following claims to proceed: (1) claims against all defendants alleging violations of the Religious Freedom Restoration Act (RFRA); (2) claims that defendants Kruger, Underwood, Cox, Hunt, Gilliam, Watson, Abrahims, Holliday, and Lubbehusen were deliberately indifferent to Mr. Ajaj's serious medical need in violation of the Eighth Amendment based on their depriving him of a medically required and

---

[1] J.E. Kruger, Michael Underwood, Jason Cox, Timothy Hunt, Robert Roloff, Christopher McCoy, T. Watson, Melissa Kimberly, K. Lubbehusen, Michael Gilliam, Jason Dodge, David Floyd, Mitchel Holliday, Scott Abrahims, Jonathan Sutter, and the Federal Bureau of Prisons.

1

Halal diet; (3) claims against defendants Kruger, Underwood, Holliday, Abrahims, Hunt, Cox, Watson, Lubbehusen, Dodge, and McCoy for retaliation in violation of the First Amendment; and (4) claims against defendants Lubbehusen and Dodge for defamation and slander under state law.

The defendants have moved to dismiss a number of these claims. For the reasons below, that motion is **GRANTED** in part and **DENIED** in part.

## I. Preliminary Motions

Before turning to the motion to dismiss, the Court will address Mr. Ajaj's motion to supplement and motion to stay proceedings.

The motion to supplement, dkt. [57], is **GRANTED**. The Court has reviewed and will consider Mr. Ajaj's additional legal argument, dkt. 57-1.

The motion for stay of proceedings, dkt. [58], is **DENIED**. The Court has accommodated Mr. Ajaj by granting multiple extension requests and providing him copies of documents he said he could not obtain. *See* dkts. 9 and 9-2 (providing docket sheet); dkts. 12 and 12-1 (providing blank motion for counsel); dkt. 45 (granting motion for extension of time); dkts. 49 and 49-1 (granting motion for extension of time and providing copies of defendants' motion to dismiss and supporting memorandum); dkts. 51 and 51-1 (providing another blank motion for counsel); dkt. 55 (granting motion for extension of time).

## II. Discussion

### A. Retaliation Claims

Mr. Ajaj brings his retaliation claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); *see King v. Federal Bureau of Prisons*,

2

415 F.3d 634, 636 (7th Cir. 2005) (explaining that *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . . ."). The defendants seek to dismiss these claims for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The defendants argue that *Bivens* does not create a cause of action for First Amendment retaliation claims. Dkt. 29 at 12–19. Expanding *Bivens* to new types of claims is a "disfavored judicial activity," and the Supreme Court has established a process for lower courts to determine whether a *Bivens* remedy is available for a constitutional claim involving federal actors. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). First, the court must ask whether the claim presents a new *Bivens* context. *Id.* at 1859. If it does, the court then asks whether there are any special factors that counsel hesitation against granting the extension. *Id.* at 1864–65.

This Court has consistently held that a plaintiff cannot rely on *Bivens* to bring a First Amendment retaliation claim. *Fulks v. Watson*, 2021 WL 1225922, 2:19-cv-00501-JPH-MJD, *2–6 (S.D. Ind. Mar. 31, 2021) (after recruiting counsel to argue the issue, holding that retaliation claims presented a new context and that special factors counseled against extending *Bivens* to these claims); *see, e.g., Decker v. Bradley*, 2:19-cv-00616-JRS-MJD, 2021 WL 1531178, at *2 n.2 (S.D. Ind. Apr. 18, 2021) (collecting cases). The Third and Fourth Circuits have reached the same conclusion. *Earle v. Shreves*, 990 F.3d

774 (4th Cir. 2021), *petition for cert. filed* (U.S. July 30, 2021) (No. 21-5341); *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018).

Here, Mr. Ajaj offers no reason to reconsider the conclusion this Court reached in *Fulks*. Nor does he attempt to show why his retaliation claims are different. Instead, he argues that the Court should appoint counsel to argue the issue. But Mr. Ajaj has not shown why the Court should appoint him counsel. *See* dkt. 51 at 1–3. The Court heard argument from counsel in *Fulks*, and scarce *pro bono* resources are not well spent relitigating the same issue.

Accordingly, Mr. Ajaj's First Amendment retaliation claims are **DISMISSED** for failure to state a claim upon which relief may be granted.

### B. Slander and Defamation Claims

Mr. Ajaj alleges that defendants Lubbehusen and Dodge slandered and defamed him. Dkt. 1 at 28–29, ¶¶ 294–302. The defendants argue that these claims are barred by sovereign immunity, dkt. 29 at 10, and Mr. Ajaj concedes the point, dkt. 53 at 5. Mr. Ajaj's slander and defamation claims against Lubbehusen and Dodge are therefore **DISMISSED** because they seek monetary damages from defendants who are immune from such relief.

### C. Claims Against Mitchel Holliday

Defendant Mitchel Holliday is the Chief of Nutrition and Dietetics for the United States Public Health Service. Dkt. 28-1, ¶ 1. Mr. Ajaj alleges that Mr. Holliday ordered other defendants not to serve him Halal meals, not to provide him meals that are safe for his medical conditions, and not to provide him adequate calories. Dkt. 1 at 7–8, ¶¶ 70–76; *id.* at 24, ¶¶ 253, 255.

Mr. Holliday seeks dismissal under Rule 12(b)(1), arguing that the Court has no jurisdiction over the claims against him because he is protected by absolute immunity. Dkt. 29 at 10–12. This is a factual challenge, so the Court "may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

A commissioned officer of the Public Health Service is immune from damages for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . [performed] while acting within the scope of his office or employment." 42 U.S.C. § 233(a). Mr. Ajaj argues that (1) § 233(a)'s grant of immunity does not apply to RFRA claims after *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), and (2) Holliday was acting outside the scope of his employment. The Court addresses each argument in turn.

### 1. § 233(a) Immunity after *Tanzin*

RFRA allows a plaintiff to sue federal officials in their individual capacities under RFRA for "appropriate relief." 42 U.S.C. § 2000bb-1(c). In *Tanzin*, the Supreme Court announced that "appropriate relief" in this context includes damages. 141 S. Ct. at 491–93. But *Tanzin* did not hold that RFRA repealed Congress's grant of immunity to Public Health Service officials in 42 U.S.C. § 233(a), and Mr. Ajaj has not cited authority interpreting *Tanzin* to the contrary. Indeed, the phrase "'[a]ppropriate relief' is open-ended and ambiguous about what types of relief it includes." *Sossamon v. Texas*, 563 U.S. 277, 286 (2011) (discussing "appropriate relief" in the Religious Land Use and Institutionalized Persons Act). And courts routinely decline to read such ambiguous statutory

language as an implied repeal of a prior statute. *See, e.g., Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) ("We have repeatedly stated that absent a clearly expressed congressional intention, an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." (cleaned up)). There is no reason for a different approach here. Mr. Ajaj has not shown that *Tanzin* repealed the grant of immunity in 42 U.S.C. § 233(a) for RFRA claims.

### 2.     Scope of employment

The remaining issue is whether Mr. Holliday acted within the scope of his employment for § 233(a) purposes. State law governs this issue. *See Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021). Neither party argues which state's law governs, so the Court applies Indiana law. *Cf. McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). (holding, in case involving supplemental jurisdiction, that "[w]hen no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law").

Under Indiana law, an employee's conduct is within the scope of employment if it is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000). This is a broad definition. Indeed, "[e]ven criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as

to fall within its scope." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (cleaned up).

Mr. Holliday testified that "[a]ny and all actions that [he] may have taken in relation to Plaintiff and his allegations in this lawsuit were undertaken within the scope of [his] official duties." Dkt. 28-1, ¶ 3 (Holliday declaration). Mr. Ajaj offers no evidence in rebuttal, and the allegations in his complaint do not undermine Mr. Holliday's testimony. Mr. Ajaj alleges that Mr. Holliday directed staff to stop serving Mr. Ajaj Halal meals, directed staff to defy medical diet orders, and directed staff to provide Mr. Ajaj with insufficient calories. Dkt. 1 at 7–8, ¶¶ 71–72; *id.* at 24, ¶¶ 253, 255. Whether constitutional or not, these actions were squarely within Mr. Holliday's duties as Chief of Nutrition and Dietetics. He is therefore absolutely immune from individual liability under 42 U.S.C. § 233(a), and the claims against him are **DISMISSED** for lack of subject matter jurisdiction.

### D. Claims for Injunctive Relief Against the Bureau of Prisons

Mr. Ajaj seeks injunctive relief from the Bureau of Prisons based on some of his RFRA claims. The Bureau of Prisons argues that this Court lacks jurisdiction over Mr. Ajaj's claims for injunctive relief, which are now moot because they are based on conditions at USP-Terre Haute. *See* Fed. R. Civ. P. 12(b)(1).

Mr. Ajaj, however, alleges at least two ongoing violations: Bureau of Prisons employees "are still refusing to serve [him] with a diet [that] complies with his sincerely held religious dietary laws and his medically prescribed dietary

restrictions," dkt. 1 at 8, ¶ 73, and the Bureau of Prisons has blocked email addresses of Islamic organizations, *id.* at 20, ¶ 213–15. These claims for injunctive relief are not moot.

But the Bureau of Prisons correctly argues that this Court is not a proper venue for those claims. *See* Fed. R. Civ. P. 12(b)(3). In a case involving multiple parties and multiple claims, the plaintiff must establish that venue is proper as to each defendant and each claim.[2] Wright & Miller, 14D Fed. Practice & Proc., § 3808 (collecting cases). A civil action where the defendant is an agency of the United States "may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Mr. Ajaj does not assert that either he or the Bureau of Prisons resides in this district, so his only path to venue in this court is § 1391(e)(1)(B). He asserts that a substantial part of the events or omissions giving rise to his claims occurred in this district at USP-Terre Haute. Dkt. 53 at 4–5. And that's true for his claims against individual defendants, but not for his claims against the Bureau of Prisons.

---

[2] Courts have, in some cases, exercised "pendant" venue even where venue is not proper as to each defendant and each claim. *See Head v. Delta Airlines, Inc.*, No. 10 C 5107, 2011 WL 13383915, at *1 (N.D. Ill. Feb. 7, 2011) (collecting cases and declining to apply pendant venue). This practice is neither authorized nor expressly forbidden by the relevant venue statute, 28 U.S.C. § 1391. The Court need not decide in this case whether pendant venue is permissible because at least one other district, the Middle District of Pennsylvania, is a proper venue and a more convenient forum. Mr. Ajaj is present there, as are many witnesses with knowledge of the conditions of his current confinement.

8

Mr. Ajaj sues the Bureau of Prisons only for injunctive relief, and injunction relief is, by definition, prospective.[3] So the events giving rise to his claims against the Bureau of Prisons are the ones that were ongoing when he filed his complaint. And by that time, Mr. Ajaj was housed at USP-Allentown.

The Court has the discretion to dismiss Mr. Ajaj's claims against the Bureau of Prisons without prejudice or to sever them and transfer the resulting new action. 28 U.S.C. § 1406(a). But there are multiple districts where venue would be proper for these claims, and Mr. Ajaj is an experienced litigant who may choose where—and whether—to file a new action. Therefore, Mr. Ajaj's claims against the Bureau of Prisons are **DISMISSED** without prejudice for improper venue.

E.   **Claims Regarding Imam and Religious Diet**

Mr. Ajaj alleges that defendants Kruger, Underwood, Cox, Hunt, Roloff, Gilliam, Holliday, and Abrahims failed to provide him with Halal meals at USP-Terre Haute from October 2018 through February 2019. Dkt. 1 at 6–8, ¶¶ 57–76. He also alleges that defendants Kruger, Underwood, Cox, Sutter, Roloff, and Watson denied him access to an "Islamically qualified Sunni Imam." *Id.* at 9–11, ¶¶ 86–106. He has already litigated similar claims in federal court. *See Ajaj v. Fed. Bureau of Prisons*, No. 15-cv-00992-RBJ-KLM, 2018 WL

---

[3] Indeed, he cannot sue the BOP for damages under RFRA. *Crowder v. Lariva*, No. 2:14-cv-00202-JMS-MJD, 2016 WL 4733539, at *7 (S.D. Ind. Sept. 12, 2016) ("RFRA does not waive the United States' sovereign immunity from monetary damages."); *see Davila v. Gladden*, 777 F.3d 1198, 1209–10 (11th Cir. 2015) (same); *Oklevuaha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (same); *see Sossaman*, 563 U.S. at 286 (holding that states did not waive sovereign immunity by receiving federal funds conditioned on being subject to claims for "appropriate relief" in the Religious Land Use and Institutionalized Persons Act).

4356787 (D. Colo. Sept. 13, 2018). The defendants therefore move to dismiss these claims pursuant to Rule 12(b)(6) based on the defense of issue preclusion.[4]

To successfully raise issue preclusion, a party must demonstrate that "(1) the issue sought to be precluded was the same as that involved in the prior litigation, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action." *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019) (cleaned up). But even where these elements are met, issue preclusion does not apply when the "controlling facts or legal principles have changed significantly." *Montana v. United States*, 440 U.S. 147, 155 (1979); *see Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (declining to apply issue preclusion where there was a post-judgment change in law).

Here, the defendants have shown all the elements of issue preclusion as to Mr. Ajaj's Imam claims and his Halal meal claims. The issues are the same, they were actually litigated, the determinations were essential to the final judgment, and Mr. Ajaj was the plaintiff in both cases. But Mr. Ajaj asserts that the controlling facts for both claims have changed.

As to his Imam claims, he asserts that "the 'Imam' in this case is not the same as that involved in the prior action." Dkt. 53 at 9 (explaining that the Imam hired at USP-Terre Haute is from a sect he considers heretical). But the identity of the Imam—and even the Imam's sect—was not a controlling factor in the prior

---

[4] In a footnote in their reply, the defendants argue that Mr. Ajaj's claims should be dismissed under the doctrine of claim preclusion. Dkt. 56 at 8 n.6. Because the defendants raise this argument for the first time in their reply, it is waived.

litigation. The Colorado district court found that Mr. Ajaj's religious beliefs were not substantially burdened even though he disagreed with—and refused to interact with—the Imam who was then in place at USP-Terre Haute. *Ajaj*, 2018 WL 4356787, at *6. Even if Mr. Ajaj found the new Imam more intolerable than his predecessor, it does not change the Colorado district court's controlling factual findings that Mr. Ajaj had constitutionally sufficient alternatives for accessing an Imam. *Id.* ("Mr. Ajaj has the opportunity to engage in group prayer every day; and to have direct in-person contact with an Imam; and to attend 'non-denominational' Islamic classes taught by an Imam; and to consult with other Imams by telephone, mail and email; and to maintain at all times his own, personal religious beliefs and values even though they might not entirely match those of the Imams.").

But the Halal meal claims are different. At the time of trial in his Colorado case, Mr. Ajaj was receiving improvised Halal meals that included dry cereal, boiled eggs, fruit, dairy, and tea. *Id.* at *3. These meals were meant as a bridge to satisfy Mr. Ajaj's religious beliefs until the Bureau of Prisons could implement a nationwide solution. *Id.* at *5. Here, Mr. Ajaj challenges the nationwide solution that had not yet been implemented at the time of his Colorado litigation. This new diet represents a significant change in the controlling facts for Mr. Ajaj's Halal meal claims, such that issue preclusion does not apply.

Accordingly, Mr. Ajaj's Imam claims are **DISMISSED**, but his Halal meal claims shall continue in this action.

### IV. Conclusion

Mr. Ajaj's motion to supplement, dkt. [57], is **GRANTED**. His motion to stay proceedings, dkt. [58], is **DENIED**.

The defendants' partial motion to dismiss, dkt. [28], is **GRANTED** in part and **DENIED** in part. The following claims are **DISMISSED**:

- all claims against defendant Mitchel Holliday;
- all claims against the Bureau of Prisons;
- all state-law slander and defamation claims;
- all First Amendment retaliation claims; and
- all claims based on lack of access to an acceptable Imam.

The **clerk is directed** to terminate Mitchel Holliday and the Bureau of Prisons as defendants on the docket.

**SO ORDERED.**

Date: 9/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

AHMAD M. AJAJ
40637-053
ALLENWOOD – USP
ALLENWOOD U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 3000
WHITE DEER, PA 17887

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov